IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NORA GLENN,

           Plaintiff,                    No. CIV S-07-0637 GGH

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

                             ORDER

           Defendant.

_____/

          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II of the Social Security Act ("Act").  For the reasons that follow, plaintiff's Motion for Summary Judgment is granted in part, the Commissioner's Motion for Summary Judgment is denied, and this matter is remanded to the ALJ for further findings as directed in this opinion.  The Clerk is directed to enter judgment for plaintiff.

BACKGROUND

          Plaintiff, born September 23, 1960, applied for disability benefits on September 6, 2004. (Tr. at 28, 20.)  Plaintiff alleged she was unable to work since September 20, 2001, due to ruptured discs in the lower back and left knee problems.  (Tr. at 19; 52, 16.)

1

1      In a decision dated July 14, 2006, ALJ Mark Ramsey determined that plaintiff was

2   not disabled.[1]  The ALJ made the following findings:

3          1.      The claimant has not engaged in substantial gainful activity
                   after September 20, 2001.
4
5          2.      The medical evidence establishes that the claimant has
                   degenerative joint disease, but that he [sic] does not have an
6                  impairment or combination of impairments listed in, or
                   medically equal to one listed in Appendix 1, Subpart P, and
                   Regulations No. 4.
7
8          3.      The claimant's subjective complaints are not consistent
                   with the evidence of record and not fully credible.
9
10         4.      The claimant has the residual functional capacity for lifting
                   40 pounds occasionally, and 20 pounds frequently.  The
                   claimant can stand and walk for 6 hours, in an 8 hour day
11                 (in 1-2 hour increments), and sit for 6 hours, in an 8 hour
                   day (in 2 hour increments).  The claimant can bend on an

12  _____

13      [1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
    Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
14  disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in
    part, as an "inability to engage in any substantial gainful activity" due to "a medically
15  determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
    A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
16  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
    137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
17          Step one:  Is the claimant engaging in substantial gainful
            activity?  If so, the claimant is found not disabled.  If not, proceed
            to step two.
18          Step two:  Does the claimant have a "severe" impairment?
            If so, proceed to step three.  If not, then a finding of not disabled is
19          appropriate.
            Step three:  Does the claimant's impairment or combination
20          of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
            404, Subpt. P, App.1?  If so, the claimant is automatically
21          determined disabled.  If not, proceed to step four.
            Step four:  Is the claimant capable of performing his past
22          work?  If so, the claimant is not disabled.  If not, proceed to step
            five.
23          Step five:  Does the claimant have the residual functional
            capacity to perform any other work?  If so, the claimant is not
24          disabled.  If not, the claimant is disabled.   _____
    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
25      The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
26  burden if the sequential evaluation process proceeds to step five.  Id.

1    occasional basis.

2    5.    The claimant cannot perform her past relevant work.  The
            claimant is 45 years of age and has a 12th grade education.
3
4    6.    Rule 202.20, Appendix 1, Subpart P, Regulations No. 4,
            directs that the claimant is not disabled, as there are a
5           significant number of jobs that she can perform.

6    7.    The claimant was not under a "disability" as defined in the
            Social Security Act, at any time through the date of this
7           decision (20 CFR § 404.1520(e) and 416.920(e)).

8    (Tr. at 19.)

9    ISSUES PRESENTED

10                Plaintiff has raised the following issues:  A.  Whether the ALJ Erred in Failing to

11   Consider Plaintiff's Morbid Obesity at Step Two; B.  Whether the ALJ Rejected Plaintiff's

12   Treating Physician Without A Legitimate Reason; C.  Whether the ALJ Failed to Credit

13   Plaintiff's Testimony Regarding Her Functional Limitations;  and D.  Whether the ALJ Failed to

14   Adequately Assess Plaintiff's Residual Functional Capacity, Failed to Pose a Legally Adequate

15   Hypothetical to the Vocational Expert, and Inappropriately Applied the Grids to Find Plaintiff

16   Not Disabled.

17   LEGAL STANDARDS

18                The court reviews the Commissioner's decision to determine whether (1) it is

19   based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

20   the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

21   Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

22   Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

23   accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

24   1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

25   (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

26   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

3

1   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

2   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

3   Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

4   ANALYSIS

5       A.  Whether Plaintiff's Obesity Constitutes a Severe Impairment Under Step Two

6           Plaintiff first contends that in considering her impairments at step two, the ALJ

7   failed to consider plaintiff's obesity as a severe impairment.  If this condition is not a severe

8   impairment, there is no need to proceed with further consideration of its impact on plaintiff's

9   functional capacity.

10          An impairment is not severe only if it "would have no more than a minimal effect

11  on an individual's ability to work, even if the individual's age, education, or work experience

12  were specifically considered."  SSR 85-28.  The purpose of step two is to identify claimants

13  whose medical impairment is so slight that it is unlikely they would be disabled even if age,

14  education, and experience were taken into account.  Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct.

15  2287 (1987).  "The step-two inquiry is a de minimis screening device to dispose of groundless

16  claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

17          Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005), considered plaintiff's obesity at

18  all stages of the sequential analysis in light of Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003).

19  The Celaya factors include whether, despite plaintiff's failure to specifically raise obesity, it was

20  raised as a disabling factor in plaintiff's report of symptoms, whether it was clear from the record

21  that the obesity was close to the listing criterion, and could exacerbate the other alleged

22  impairments, and whether the ALJ should have been on notice of the need to develop the record

23  on obesity due to plaintiff's pro se status, in light of his observation of plaintiff and other

24  information in the record.  Id. at 1182.

25          The ALJ did address plaintiff's obesity briefly.  He stated, "although the record

26  shows that the claimant is obese, no physician has suggested any relating limitation, and the

4

1    claimant has not alleged that she is limited by her weight." (Tr. at 18.)  He also noted that

2    although the records described plaintiff as obese, there were no other significant objective

3    findings.  (Id. at 17.)  The court has reviewed the record for any indication of obesity and found

4    several significant references.  At 5 feet 8 1/2 inches tall,[2] plaintiff's weight fluctuated between

5    230 and 312 pounds.  On July 22, 2003, exogenous obesity was listed as one of the diagnoses.

6    (Tr. at 124.)  Elsewhere, there are a few notes by practitioners when conducting a physical exam

7    which described plaintiff's general presentation or advised her to lose weight. (Id. at 126, 136.)

8           Importantly, on two occasions plaintiff's weight was linked to her back problems.

9    On November 13, 2004, Dr. Pliam noted plaintiff's morbid obesity and her limited lumbar

10   motion and discomfort in her hip.  He wanted to rule out degenerative arthritis which he would

11   not expect at her young age except for the fact that she was considerably overweight.  (Tr. at

12   150.)  Objective studies later ruled out degenerative arthritis because although mentioned as a

13   potential consequence of obesity; see SSR 02-01p; plaintiff was not diagnosed with this ailment

14   and there was no evidence that her obesity caused her current problems.  An x-ray of the pelvis

15   and hips on October 13, 2005 indicated no severe arthritis.  (Id. at 168.)  On October 18, 2005, a

16   bone scan of the hips was negative, but showed only mild increased activity in the left femoral

17   head compared to the right side.  (Id. at 167.)

18          On January 24, 2006, Dr. Corkill examined plaintiff and her MRI in regard to her

19   back problems and stated, "I discussed with Ms. Glenn the situation that is going on with her

20   lower back which is too much wear and tear for too many years in terms of her nursing work and

21   her weight situation."  (Id. at 181.)  He recommended that she do "aqua therapy twice a week and

22   lose weight and recondition her painful back."  (Id.)  There was no other reference,

23   recommendation, or diagnosis in this regard made at the time.

24   \\\\\

25
26          [2] Her height has been variously reported as 5 feet 7 inches and 5 feet 10 inches; however,
     it has most often been reported to be 5 feet 8 1/2 inches.

It appears that plaintiff could be characterized as obese or extremely obese based on these records.  See www.nhlbisupport.com/bmi.  According to Social Security Ruling 02-01p, her body mass index (BMI) of between 35 and 47 at weights between 230 and 312 categorize her at obese to extremely obese.[3]  Although plaintiff's initial filings with the Social Security Administration did not raise obesity as an impairment, but only her back, hip and bladder control problems, and functional limitations, her counsel strenuously raised obesity as an issue at every level of the administrative proceedings.  The day before the administrative hearing plaintiff's counsel wrote a pre-hearing brief to the Office of Hearings and Appeals, pointing out obesity as a factor contributing to plaintiff's symptoms, and requesting that the record be held open for two weeks after the hearing to obtain a physical capacity evaluation form from Dr. Corkill.  He added that plaintiff would testify at the hearing about obesity as a factor to her symptoms.  (Tr. at 85-86.)  Despite this letter, plaintiff's counsel at hearing questioned her in only a cursory manner about her weight.  He asked her for her weight and height and whether her weight has been going up or down.  Plaintiff responded that it was going up since she got hurt.  (Tr. at 232.)   The ALJ did state at the hearing that he would hold the record open for two weeks, and plaintiff submitted further records which mentioned obesity only once in passing.  (Id. at 184-94.) Plaintiff's counsel raised obesity as a factor again at the Appeals Counsel level, contending that the ALJ did not adequately consider plaintiff's obesity, among other issues.  (Tr. at 208.)

In this case, although there only a few reports discussing plaintiff's weight with very little recommendation, and no record of a BMI, there was sufficient evidence and argument to put the ALJ on notice to consider it as a limiting factor, especially in light of the fact that plaintiff's back and knee problems were surely affected by her obesity.  A consideration of the impact of plaintiff's obesity on her back restrictions may make a difference to her limitations.  As

---

[3] "BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2).  For adults, both men and women, the Clinical Guidelines describe a BMI of 30.0 to 39.0 as 'obesity, and 40 and above as 'extreme obesity.'" SSR 02-01p.

1  explained by Social Security Ruling 02-01p:

2          Furthermore, although SSR 02-01p makes clear that obesity is a disease that must

3  be considered when evaluating disability, and the "combined effects of obesity with other

4  impairments can be greater than the effects of each of the impairments considered separately,"

5  the ALJ "will evaluate each case based on the information in the case record."  (Id.)

6          Here, the record was clear and the ALJ should have found obesity to be a severe

7  impairment, as well as substantively addressed the combined effects of obesity with other

8  impairments.  Even if it is ultimately determined that listing equivalence is not satisfied, the ALJ

9  must take into account the fact of obesity at the other levels of the sequential analysis.  This case

10  cannot be "finally" adjudicated because this issue was not fully addressed.  As required by

11  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993), the ALJ must consider obesity which

12  exacerbates an impairment as an additive, impairing factor unless the ALJ makes a specific

13  factual finding based on substantial evidence that the obesity is remediable.  No such finding was

14  or could be made on the present record.  Accordingly, the matter will be remanded for further

15  consideration by the ALJ and further development of the record if necessary.

16      B.  Other Issues

17          The other issues raised by plaintiff will not be addressed at the present time, based

18  on the remand which may affect various steps of the sequential process.  Because the issue of

19  plaintiff's obesity as an aggravating factor must be considered on remand, it is not necessary to

20  address whether the ALJ properly rejected the opinion of treating physician Dr. Corkill at the

21  present time.  On remand, the ALJ could very well analyze this physician's records in a different

22  light.

23          Plaintiff also challenges the ALJ's credibility finding.  Because the matter is being

24  remanded for further proceedings, the court will not reach this argument.  However, on remand,

25  if plaintiff's testimony regarding her subjective complaints is discredited, the ALJ must, in the

26  absence of affirmative evidence showing that plaintiff malingering, set forth clear and convincing

7

1  reasons for rejecting plaintiff's testimony." <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169

2  F.3d 595, 599 (9th Cir. 1999).

3          Finally, plaintiff contests the ALJ's assessment of her residual functional capacity,

4  including his hypothetical to the vocational expert and his application of the grids.  This issue

5  might also change with further analysis of obesity by the ALJ and therefore will not be

6  considered at the present time.

7  <u>CONCLUSION</u>

8          Accordingly, plaintiff's Motion for Summary Judgment is GRANTED in part

9  pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's Cross Motion for

10  Summary Judgment is DENIED, and this matter is remanded for further findings in accordance

11  with this order.  The Clerk is directed to enter Judgment for plaintiff.

12  DATED: 09/03/08

                                        /s/ Gregory G. Hollows
13
                                        _____
14                                      GREGORY G. HOLLOWS
                                        U.S. MAGISTRATE JUDGE
   GGH/076
15 Glenn0637.ss.wpd